UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x
RONALD WILLIAMS,

                        Plaintiff,

              - against -

HONORABLE BARRY KRON, RICHARD
CARY, ADA MELINDA KATZ,
GENEVIEVE GADALETA, POLICE
OFFICER JOHN TOTO, and ATTORNEY
GENERAL L. JAMES,

                     Defendants.
-------------------------------------------------------x

**MEMORANDUM & ORDER**
20-CV-4593 (PKC) (VMS)

PAMELA K. CHEN, United States District Judge:

On October 14, 2020, Plaintiff Ronald Williams, who is currently incarcerated at Rikers

Island, initiated this *pro se* action pursuant to 42 U.S.C. § 1983 with the filing of a complaint with

exhibits, Notice of Claim against the City of New York, and Motion for Leave to Proceed *in forma*

*pauperis*. (Dkts. 1–3.) On October 19, 2020, Plaintiff filed a 201-page amended complaint that

includes both a complaint form as well as voluminous attachments. (Amended Complaint ("Am.

Compl."), Dkt. 5.) The Amended Complaint names the Honorable Barry Kron, ADA Melinda

Katz, Genevieve Gadaleta, Richard Cary, Police Officer John Toto, and Attorney General L. James

as Defendants.[1]  (Dkt. 5, at ECF[2] 3.)  The Court grants Plaintiff's request to proceed *in forma pauperis*.  For the reasons set forth below, certain Defendants are dismissed, and Plaintiff is granted leave to file a Second Amended Complaint with respect to certain other Defendants and claims.

## BACKGROUND[3]

On August 20, 2019, Plaintiff was "arrested for robbery in [the] second degree" by "the police of the 106 Precinct in Queens," and with the "us[e] physical force."  (Am. Compl., Dkt. 5, at ECF 4.)  Plaintiff claims that he "was stopped because he was Black."  (*Id.*)  Plaintiff was "detained, searched, seized and arrested and was not told of [h]is Miranda Rights."  (*Id.*)  The description provided by the victim to the police was of "[a] black male, wearing a cap, hat, T-Shirt, black Jeans[,]" which, Plaintiff asserts, is  "[v]ague," "incomplete in detail," and "literally can fit thousands of men in our [s]ociety at any [g]iven time[.]"  (*Id.* at ECF 44.)  Plaintiff also complains that "[t]he police should have obtained proper ID description of the perpetrator" and should have asked Plaintiff if he "would . . . be willing to clear up this matter and come down for a line up."  (*Id.*)  Instead, according to Plaintiff, the grand jury that indicted him heard "[n]o [e]vidence or

---

[1] The Court assumes that "Richard Cary" refers to Plaintiff's court-appointed criminal defense attorney, who is identified in correspondence included with the Amended Complaint as Richard Cary Spivack.  (Dkt. 5, at ECF 7.)  The Court further assumes that "ADA Melinda Katz" refers to Queens County District Attorney Melinda Katz, whose office is prosecuting the pending criminal case against Plaintiff.  (*Id.* at ECF 14.)  Lastly, the Court assumes that "Attorney General L. James" refers to New York State Attorney General Letitia James, to whom Plaintiff sent a letter included with the Amended Complaint.  (*Id.* at ECF 6, 72.)  The Court respectfully requests that the Clerk of Court amend the docket accordingly.

[2] Citations to "ECF" refer to the pagination generated by the Court's CM/ECF docketing system and not the document's internal pagination.

[3] For purposes of this section, the Court accepts, as it must, the relevant non-conclusory factual allegations of the Amended Complaint.  *See Milan v. Wertheimer*, 808 F.3d 961, 963 (2d Cir. 2015) (per curiam) (citation omitted).

[t]estimony describing the ID" nor "any real evidence or testimony of how [the victim] pointed out her assailant!"  (*Id.*)

With respect to the criminal case pending against him, Plaintiff alleges that the police department and the District Attorney's[4] office "are creating a collusion working in conjunction to illegally indict [him] of a crime [he] did not commit" and that it was "suggestive by the Police that [he] was the person who committed the robbery."  (*Id.* at ECF 4.)  Plaintiff alleges that the District Attorney[5] and his assigned counsel, Richard Cary Spivack, violated his due process rights by not allowing him "to go to the grand jury," (*id.* at ECF 4), and that Mr. Spivack "denied [him] the right of a preliminary hearing" by telling him "that the Queens Courts do not do preliminary hearing[s]" (*id.* at ECF 6).  Plaintiff further alleges that Assistant District Attorney Genevieve Gadaleta violated his Sixth Amendment rights by failing to provide him with certified copies of the complaint and indictment, and by failing to give him proper notice of witness testimony that the prosecution intended to offer at trial.  (*Id.* at ECF 6.)  Finally, Plaintiff alleges that New York State Supreme Court Justice Barry Kron, who presided over his arraignment (*id.* at ECF 14–22), set "excess bail" in the amount of $125,000.00 cash (*id.* at ECF 4–5).

Plaintiff "filed a complaint to the office of the Attorney General[] Letitia James" on or about October 27, 2020, and spoke with a 311 operator named Briana on or about December 7, 2019.  (*Id.* at ECF 6.)  Plaintiff attaches a letter to Attorney General James asking her office to investigate his complaint that the judge in his case "would not follow the new criminal reform laws

---

[4] The Court assumes references to the "District Attorney's Office" refer to the Queens County District Attorney's Office, which is currently prosecuting Plaintiff.  (Dkt. 5, at ECF 14.)

[5] The Court assumes that references to the "District Attorney" refer to Melinda Katz, District Attorney of Queens County.  (Dkt. 5, at ECF 14.)

from the Governor's office" and that he was arrested by officers who were "involved in the stop and frisk which was later found to be illegal." (*Id.* at ECF 72.)

With respect to his current pre-trial detention, Plaintiff also alleges that his Fourteenth Amendment rights are being violated by the "department of Correction,"[6] which has acted with deliberate indifference to the risk of serious medical harm posed to Plaintiff, and is "incapable of protecting him from contract[ing] [COVID-19]." (*Id.* at ECF 6.) Plaintiff notes that he is 55 years old with medical conditions, including asthma, hypertension, heart and kidney disease. (*Id.* at ECF 4, 6.) In particular, Plaintiff alleges the "gross negligence of the NYCDOC" in allowing overcrowded cells with symptomatic and sick individuals, failing to enforce distancing measures, and failing to provide protective equipment, all of which, he asserts, has resulted in increasing numbers of COVID-positive cases and even deaths. (*Id.* at ECF 10–11.) Plaintiff also alleges that he and others "complained to several officers' captains and deputy Chester," who acknowledged the overcrowding and said they would work on it, but then "[t]he very next day officers brought more people to [the] overcrowded cell units." (*Id.* at ECF 10.)

## LEGAL STANDARD

The Prison Litigation Reform Act, 28 U.S.C. § 1915A, requires this Court to review the complaint in a civil action in which a prisoner seeks redress from a governmental entity or from officers or employees thereof, and to "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from

---

[6] Plaintiff is currently in custody on Rikers Island, which is operated by the New York City Department of Correction. *See* https://www1.nyc.gov/site/doc/about/about-doc.page (last visited Dec. 15, 2020). Accordingly, the Court construes all references to the "Department of Corrections" or "NYCDOC" as the New York City Department of Correction ("NYCDOC").

such relief." 28 U.S.C. § 1915A(b); *see Abbas v. Dixon*, 480 F.3d 636, 639 (2d Cir. 2007). Similarly, pursuant to the *in forma pauperis* statute, a district court must dismiss a case if the court determines that the complaint "(i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).

A complaint must plead facts sufficient to "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although all allegations contained in the compliant are assumed to be true, this tenet is "inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)). "If [a] liberal reading of the complaint gives any indication that a valid claim might be stated, the Court must give the plaintiff an opportunity to amend the complaint." *Nelson-Charles v. U.S. Dep't of Educ.*, No. 19-CV-1616 (PKC) (PK), 2019 WL 1675999, at *2 (E.D.N.Y. Apr. 16, 2019) (internal quotation marks omitted) (quoting *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).[7]

---

[7] Plaintiff filed a 201-page document that includes a five-page civil rights complaint, and attaches voluminous exhibits consisting of, *inter alia*, transcripts from the indictment and grand jury proceedings, correspondence with his criminal defense attorney, Mr. Spivack, forensic and medical records, and papers related to Plaintiff's efforts at obtaining state habeas relief. The Court has reviewed and considered these materials in its ruling, with particular attention to those documents that appear to allege facts in support of Plaintiff's claims that his constitutional rights have been violated. (*See, e.g.*, Am. Compl., Dkt. 5, at ECF 6, 10–12, 32, 44–45, 72, 109.) In addition, the Court has also reviewed and considered documents filed by Plaintiff on November 9, 2020, (Dkt. 6.), as well documents filed by Plaintiff on December 14, 2020, (Dkt. 8), most of which are duplicative of documents filed with the Amended Complaint or of issues raised in those documents. Plaintiff has also filed a Notice, Consent, and Reference of a Civil Action to a Magistrate Judge (*see* Dkt. 7), which the Court will not so order as it is both premature and unilateral.

## I.       42 U.S.C. Section 1983

Plaintiff presents the Court with a 42 U.S.C. Section 1983 Civil Rights Complaint form. (Am. Compl., Dkt. 5, at ECF 1–5.)  Section 1983 provides a vehicle for redressing the deprivation of civil rights.  "Section 1983 'is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes.'"  *Conklin v. County of Suffolk*, 859 F. Supp. 2d 415, 438 (E.D.N.Y. 2012) (quoting *Baker v. McCollan*, 443 U.S 137, 144 n.3 (1979)); *accord Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010).

In order to maintain a civil rights action under Section 1983, a plaintiff must allege two essential elements.  First, the conduct challenged must have been "committed by a person acting under color of state law." *Cornejo*, 592 F.3d at 127 (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)); *see also Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) ("[T]he under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." (internal quotation marks and citation omitted)). Second, the conduct complained of "must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." *Cornejo*, 592 F.3d at 127 (quoting *Pitchell*, 13 F.3d at 547); *see also Snider v. Dylag*, 188 F.3d 51, 53 (2d Cir. 1999).

## DISCUSSION

## II.      Defendants Who Must Be Dismissed

As an initial matter, the following Defendants named in the Amended Complaint must be dismissed because they are immune to suit.

### A.       The Honorable Barry Kron

Judges generally have absolute immunity from suit with respect to judicial actions.  *Mireles v. Waco*, 502 U.S. 9, 11 (1991) (per curiam); *see Shtrauch v. Dowd*, 651 F. App'x 72, 73 (2d Cir.

2016) (summary order) ("It is well settled that judges generally have absolute immunity from suits for money damages for their judicial actions." (quoting *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009))). "[W]hether an act by a judge is a 'judicial' one relate[s] to the nature of the act itself, *i.e.,* whether it is a function normally performed by a judge, and to the expectations of the parties, *i.e.,* whether they dealt with the judge in his judicial capacity." *Mireles*, 502 U.S. at 12 (quoting *Stump v. Sparkman*, 435 U.S. 349, 362 (1978)). Judicial immunity "is not overcome by allegations of bad faith or malice," nor can a judge "be deprived of immunity because the action he took was in error . . . or was in excess of his authority." *Id.* at 11, 13 (citation omitted).

Here, Plaintiff alleges that Justice Kron violated his rights by setting "excess bail" at $125,000 cash. (Am. Compl., Dkt. 5, at ECF 4, 21.) Justice Kron's act of setting Plaintiff's bail was unquestionably a judicial action, in that it was both "a function normally performed by a judge," and Plaintiff was dealing with Justice Kron "in his judicial capacity." *Mireles*, 502 U.S. at 12. Therefore, even if that judicial action was in error or bad faith, Justice Kron is immune from suit and must be dismissed.

## B. District Attorney Melinda Katz and Assistant District Attorney Genevieve Gadaleta

"A prosecutor acting in the role of an advocate in connection with a judicial proceeding is entitled to absolute immunity for all acts 'intimately associated with the judicial phase of the criminal process,'" including grand jury proceedings. *Simon v. City of New York*, 727 F.3d 167, 171 (2d Cir. 2013) (quoting *Imbler v. Pachtman*, 424 U.S. 409, 430 (1976)); *see also Dory v. Ryan*, 25 F.3d 81, 83 (2d Cir. 1994) ("[A]bsolute immunity protects a prosecutor from § 1983 liability for virtually all acts, regardless of motivation, associated with his function as an advocate."); *Burns v. Reed*, 500 U.S. 478, 490 (1991) (noting that "the common-law immunity extended to a prosecutor's conduct before a grand jury" (citation omitted)). Thus, a prosecutor enjoys absolute

immunity with respect to the decision of "whether to bring charges and presenting a case to a grand jury or a court, along with the tasks generally considered adjunct to those functions, such as witness preparation, witness selection, and issuing subpoenas." *Simon*, 727 F.3d at 171; *see Shmueli v. City of New York*, 424 F.3d 231, 237 (2d Cir. 2005) ("[T]he prosecutor has absolute immunity for the initiation and conduct of a prosecution 'unless [he] proceeds in the clear absence of all jurisdiction'" (citation omitted)). This immunity even extends to allegations that the prosecutor conspired to present false evidence at trial, *see Dory*, 25 F.3d at 83, knowingly used false testimony, *see Shmueli*, 424 F.3d at 237, or deliberately withheld exculpatory evidence, *see id*. Furthermore, "[w]hen prosecuting a criminal matter, a district attorney in New York State, acting in a quasi-judicial capacity, represents the State not the county," and is therefore "entitled to invoke Eleventh Amendment immunity." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir. 1993) (citation omitted); *see Crespo v. Rivera*, No. 16-CV-708 (PGG), 2018 WL 4500868, at *4 (S.D.N.Y. Sept. 19, 2018) ("[T]he Eleventh Amendment bars Plaintiff's claims against [the ADAs] in their official capacities, because they represent the state in their role as criminal prosecutors").

Plaintiff alleges that District Attorney Katz and Assistant District Attorney Gadaleta prevented him from going to the grand jury, illegally indicted him, and failed to provide proper notice of the indictment and evidence that would be presented against him. (Am. Compl., Dkt. 5, at ECF 4, 6). Whether or not Plaintiff's claims are against Katz and Gadaleta in their official capacities, which would entitle them to immunity under the Eleventh Amendment, the allegations relate to them "acting in the role of an advocate in connection with a judicial proceeding," and they have absolute immunity to suit. *Simon*, 727 F.3d at 171. Accordingly, District Attorney Katz and Assistant District Attorney Gadaleta must be dismissed.

### C.    Attorney Richard Carey Spivack

"It is well established that private attorneys—even if the attorney was court appointed—are not state actors for the purposes of § 1983 claims." *Licari v. Voog*, 374 F. App'x 230, 231 (2d Cir. 2010) (summary order); *see Rodriguez v. Weprin*, 116 F.3d 62, 65–66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."). Further, "private attorneys . . . do not act under color of state law and are not state actors for purposes of Section 1983 simply by virtue of their state-issued licenses to practice law." *Manko v. Steinhardt*, No. 11-CV-5430 (KAM) (LB), 2012 WL 213715, at *4 (E.D.N.Y. Jan. 24, 2012). Therefore, because an essential element of a Section 1983 claim cannot be met, Mr. Spivack must be dismissed.

## III.    Defendants Against Whom Claims May Be Amended

Next, when liberally construing the Amended Complaint, the Court finds that Plaintiff pleads facts that are suggestive of claims against New York Attorney General Letitia James and New York City Police Department ("NYPD") Officer John Toto,[8] but fails to make clear their involvement in and the precise nature of the alleged constitutional deprivations. For that reason, the Court grants Plaintiff leave to amend with respect to these two Defendants.

### A.    New York State Attorney General Letitia James

Plaintiff names New York State Attorney General Letitia James as a defendant and attaches a letter he sent to her, asking her office to investigate his complaint that the judge in his case

---

[8] The Court notes that although Plaintiff does not identify Officer Toto as an NYPD Officer, attached to the Complaint is the transcript of a hearing during which Officer Toto testified that he works for the "106 Precinct" of the "New York City Police Department." (Am. Compl., Dkt. 5, at ECF 84.)

"would not follow the new criminal reform laws from the Governor's office" and that he was arrested by officers who were "involved in the stop and frisk which was later found to be illegal." (Am. Compl., Dkt. 5, at ECF 6, 72.)

The New York State Attorney General is afforded immunity under the Eleventh Amendment for Section 1983 claims brought against her in her official capacity. *See Ying Jing Gan*, 996 F.2d at 529 ("To the extent that [a Section 1983] claim is asserted against the state official in his official capacity, he may assert the state's Eleventh Amendment immunity against suit."); *Moore v. Att'y Gen. of New York*, 89 F. App'x 308, 309 (2d Cir. 2004) (summary order) (affirming dismissal of Section 1983 claim "because . . . the Attorney General acting in his official capacity [was] immune from suit under the Eleventh Amendment"); *Ricciardi v. California*, No. 11-CV-6230 (RPP), 2011 WL 6413766, at *1 (S.D.N.Y. Dec. 13, 2011) (holding that the Attorney General defendants were "immune from suit in their official capacity under the Eleventh Amendment"). However, where a "complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective," there is a "limited exception to the general principle of sovereign immunity." *CSX Transp., Inc. v. New York State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002) (quotation omitted) (citing *Ex parte Young*, 209 U.S. 123, 154 (1908)); *Hahn v. New York*, 825 F. App'x 53, 54 (2d Cir. 2020) (summary order) ("[S]overeign immunity does not bar suit against a state official acting in his official capacity when the litigant seeks prospective relief based on an 'ongoing violation of federal law[.]'").

In construing the Amended Complaint liberally, Plaintiff appears to be making a claim against Attorney General James in her official capacity in relation to his request for an investigation into the "judge in [his] case" and the "officers in [his] case. (Am. Compl., Dkt. 5, at ECF 72.) However, Plaintiff fails to provide any facts explaining how, if at all, Attorney General

James violated his rights and what, if any, relief he is seeking with respect to those violations. The Court grants Plaintiff leave to amend his claim against Attorney General James if he can allege, in good faith, how she has violated his rights in her official capacity,[9] including alleging ongoing violations of federal law, and describing the type of *prospective* relief he seeks.

### B.    NYPD Officer John Toto

Plaintiff names NYPD Officer John Toto as a defendant. Documents attached to the Amended Complaint reveal that Officer Toto, along with another officer, arrested Plaintiff on the evening of August 16, 2019. (Am. Compl., Dkt. 5, at ECF 85–86.) Although several of the allegations in the Amended Complaint relate to the circumstances of Plaintiff's stop and subsequent arrest, (*see* Dkt. 5, at ECF 4), Plaintiff does not allege that Officer Toto (or any other police officer) was personally involved in any of the alleged violations of law. The Court grants Plaintiff leave to amend his claim against NYPD Officer Toto if he can allege, in good faith, facts showing NYPD Officer Toto's personal involvement in any of the alleged constitutional deprivations.

### IV.    Habeas Corpus Relief

Although the Amended Complaint is presented on a 42 U.S.C. Section 1983 Civil Rights Complaint form, the sole remedy Plaintiff seeks is release from custody on the basis that the

---

[9] While it does not appear that Plaintiff is alleging a Section 1983 claim against Attorney General James in her personal capacity, it is worth noting that such a claim must allege the Attorney General's *personal involvement* in the alleged constitutional deprivations. *Brandon v. Kinter*, 938 F.3d 21, 36 (2d Cir. 2019) ("It is well-settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." (citation omitted)). Even if this standard is met, however, absolute or qualified immunity may still foreclose such a claim. *See Mangiafico v. Blumenthal*, 471 F.3d 391, 397 (2d Cir. 2006) (affirming the district court's dismissal of a Section 1983 claim against the Attorney General of Connecticut on the grounds of absolute immunity); *Ying Jing Gan*, 996 F.2d at 529 ("To the extent that [a Section 1983] claim is asserted against [the state official] in his individual capacity, he may assert privileges of absolute or qualified immunity[.]")

"excess bail" imposed Justice Kron and the conditions of his confinement—specifically, the alleged deliberate indifference of the NYCDOC to his risk of contracting COVID-19—violate his Due Process rights.  (*See* Am. Compl., Dkt. 5, at ECF 4–5).  The remedy of release from confinement is not available under Section 1983; rather, "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus."  *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see Abdul-Hakeem v. Koehler*, 910 F.2d 66, 69 (2d Cir. 1990) ("We think the language in *Preiser* means what it says—habeas is the required procedure only if the prisoner makes a constitutional challenge to 'the very fact or duration of his physical imprisonment,' and seeks 'immediate release or a speedier release from that imprisonment.' (quoting *Preiser*, 411 U.S. at 500)); *Mendez v. United States*, No. 17-CV-1498, 2019 WL 367986, at *3 n.2 (S.D.N.Y. Jan. 30, 2019) ("[S]ince the relief Petitioner seeks is 'a speedier release from [] imprisonment, his sole federal remedy is a writ of habeas corpus.'" (citation omitted)); *Davis v. McCleary*, No. 17-CV-659 (PKC), 2017 WL 2266856, at *1 n.1 (E.D.N.Y. May 23, 2017) ("Because Plaintiff essentially challenges his current incarceration . . . the 'sole federal remedy is a writ of habeas corpus.'" (citation omitted)).

Given the nature of the relief sought, the Court construes Plaintiff's demand for release as a request for habeas corpus relief under 28 U.S.C. Section 2241[10], which is available to pre-trial detainees challenging the conditions of their confinement in state custody, *see Griffin v. Warden of the Otis Bantum Corr. Ctr.*, No. 20-CV-1707 (AJN) (SLC), 2020 WL 1158070, at *2 (S.D.N.Y. Mar. 10, 2020) ("[Section] 2241 is generally considered the proper vehicle for a state pretrial

---

[10] "The writ of habeas corpus shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C.A. § 2241(c)(3) (West).

detainee who argues that he is in custody in violation of the Constitution or federal law"); *Brown v. Williams*, No. 19-CV-750 (AMD) (LB), 2019 WL 1585226, at *1 (E.D.N.Y. Apr. 11, 2019) ("Section 2241 relief is available to state pre-trial detainees who assert that their custody violates the Constitution or federal law") (collecting cases), including based on the terms of pre-trial bail and COVID-19-related conditions of confinement. *See Carter v. Fields*, No. 19-CV-5364 (PKC), 2020 WL 5517241, at *3 (E.D.N.Y. Sept. 14, 2020) (citing *Jones v. Smith*, 720 F.3d 142, 147 (2d Cir. 2013)) (acknowledging a split among courts in this Circuit, but finding that a Section 2241 petition is the appropriate mechanism to challenge COVID-19-related conditions of confinement where Petitioner seeks release rather than damages); *Nelson v. Hynes*, No. 13-CV-3447 (KAM), 2013 WL 5502901, at *3 (E.D.N.Y. Oct. 2, 2013) ("To the extent that [petitioner] wishes to challenge his custody status, he may be able to bring a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, even though his 'custody' is limited to the pre-trial bail conditions imposed by the criminal court.")

However, the Court finds that it must dismiss Plaintiff's Section 2241 petition without prejudice because he has not demonstrated exhaustion of all available state-court remedies, including "appealing all the way up to the New York Court of Appeals."[11]  *Griffin*, 2020 WL 1158070, at *3 (citing *U.S. ex rel. Scranton v. New York*, 532 F.2d 292, 294 (2d Cir. 1976)). "State

---

[11] The Amended Complaint includes some documents addressing Plaintiff's efforts at seeking habeas relief in state court.  On May 1, 2020, Mr. Spivack filed a Petition for Writ of Habeas Corpus in the Supreme Court of the State of New York, County of Queens, seeking Plaintiff's release pending trial based on, *inter alia*, due process violations stemming from the imposition of excessive bail and COVID-19-related conditions of confinement.  (Dkt. 5, at ECF 46–63, 68–69.)  On July 7, 2020, Plaintiff sent a *pro se* Notice of Appeal, Affidavit of Service to the Clerk of Appeals for the Second Department regarding a decision entered on May 16, 2020.  (*Id.* at ECF 73.)  It is unclear whether this Notice of Appeal relates to the May 1, 2020 habeas petition.  Assuming it does, the status of such appeal is unknown, and it does not appear from the documents before the Court that Plaintiff has appealed any denial of his habeas petition to the New York Court of Appeals.

remedies are deemed exhausted when the petitioner has 'presented the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts)' and 'informed that court (and lower courts) about both the factual and legal bases for the federal claim.'" *Nelson v. Hynes*, No. 12-CV-4913 (KAM) (LB), 2013 WL 182793, at *4 (E.D.N.Y. Jan. 17, 2013) (quoting *Ramirez v. Att'y Gen. of New York*, 280 F.3d 87, 94 (2d Cir. 2001)).  Nor has Plaintiff demonstrated that "exhaustion in state court would be futile, impossible, or subject him to undue prejudice." *Carter*, 2020 WL 5517241, at *4.

The Court will grant Plaintiff an opportunity to amend his habeas claim if he can demonstrate that he has fully exhausted available grounds for relief by presenting them to the state court and appealing through one complete round of appellate review up to the New York Court of Appeals.[12]  In the alternative, Plaintiff may seek to explain to the Court why exhaustion of state-court remedies is futile, impossible, or subjects him to undue prejudice.

Despite dismissing without prejudice what the Court has construed as Plaintiff's habeas claim under Section 2241, the Court will consider whether the Amended Complaint presents a Section 1983 claim based on alleged due process violations stemming from COVID-19-related conditions of confinement.[13]  *See Moorish Sci. Temple of Am., Inc. v. Smith*, 693 F.2d 987, 989

---

[12] The Court notes that at least one district court in this Circuit has concluded, and been affirmed in a summary order by the Second Circuit, that the *Younger* abstention doctrine, which makes clear "that federal courts should not interfere in state court criminal proceedings," prevents federal courts from interfering with the pre-trial detention determination of a state court criminal defendant. *Jordan v. Bailey*, 985 F. Supp. 2d 431, 438 (S.D.N.Y. 2013), *aff'd*, 570 F. App'x 42 (2d Cir. 2014) (summary order) ("*Younger* abstention ordinarily applies to a state court's bail application proceedings." (citing *Wallace v. Kern*, 520 F.2d 400, 405–06 (2d Cir.1975))).  The Court will permit Plaintiff to amend his habeas petition to address the issue of exhaustion before considering whether the Court must abstain from addressing his petition for release based on "excess bail."

[13] Plaintiff is not foreclosed from seeking relief under both a habeas statute and Section 1983 in a single complaint.  *See Reynolds v. Petrucci*, No. 20-CV-3523 (LLS), 2020 WL 4431997, at *3 (S.D.N.Y. July 29, 2020) (citing *Thompson v. Choinski*, 525 F.3d 205, 210 (2d Cir. 2008), in

(2d Cir. 1982) ("[I]f a pleading contains claims under both § 1983 and the habeas corpus statute, the district court should dismiss the unexhausted habeas claims but address the merits of the civil rights claims."); *Nelson*, 2013 WL 5502901, at *4 ("In liberally construing the [habeas] petition from a *pro se* litigant, the court has also considered whether petitioner's claims could be maintained as a civil rights action pursuant to 42 U.S.C. § 1983.").

## V.     Section 1983 Claims That May Be Amended

### A.     Section 1983 Claim Related to Conditions of Confinement

Plaintiff, who states he is 55 years old with medical conditions including asthma, hypertension, heart and kidney disease, alleges that his Fourteenth Amendment rights are being violated by the NYCDOC, which has acted with deliberate indifference and is "incapable of protecting him from contracting [COVID-19]." (Am. Compl., Dkt. 5, at ECF 6.) In particular, Plaintiff alleges the "gross negligence of the NYCDOC" in allowing overcrowded cells with symptomatic and sick individuals, failing to enforce distancing measures, and not providing protective equipment, all resulting in increasing numbers of COVID-positive cases and even deaths. (*Id.* at ECF 10–11.) Plaintiff alleges that he and others "complained to several officers' captains and deputy Chester," who acknowledged the overcrowding and said they would work on it, but then "[t]he very next day officers brought more people to [the] overcrowded cell units." (*Id.* at ECF 10.)

A pretrial detainee may establish a Section 1983 claim for allegedly unconstitutional conditions of confinement, in violation of the Due Process Clause of the Fourteenth Amendment, "by showing that the officers acted with deliberate indifference to the challenged conditions."

---

which the Second Circuit noted that it is unaware of any "basis . . . for the view that a petitioner may not seek relief under both a *habeas* statute and [42 U.S.C.] § 1983 in a single pleading").

*Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).  To satisfy this standard, the pretrial detainee must demonstrate that the challenged conditions are "sufficiently serious to constitute objective deprivations of the right to due process" ("objective prong") and that "the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety" ("mens rea prong").  *Id.* at 29, 35.  With respect to the "objective prong," where a pretrial detainee complains of an elevated risk of being harmed by the allegedly unconstitutional conditions, the Court must determine "whether society considers the risk that the prisoner complains of to be so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.  In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate."  *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 348 (S.D.N.Y. 2020) (quoting *Helling v. McKinney*, 509 U.S. 25, 36 (1993)).

To the extent Plaintiff seeks to bring a Section 1983 claim on the basis of deliberate indifference to the risk that he could contract COVID-19, he must identify who the claim is against and the relief he is seeking.  As previously explained, Plaintiff may not seek release from custody pursuant to Section 1983, *Abdul-Hakeem*, 910 F.2d at 69, but may only seek monetary damages and/or injunctive relief short of release.  *See Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002) (affirming the availability of "compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief" for deliberative indifference claim).

As far as who the claim is brought against, a claim against NYCDOC cannot stand, as suits against City agencies must be against the City of New York itself.  *See Joseph v. NYC Dep't of Corr.*, No. 20-CV-1676 (PKC) (LB), 2020 WL 2128860, at *2 (E.D.N.Y. May 5, 2020); N.Y. City

16

Charter ch. 17, § 396 ("[A]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the [C]ity of New York and not in that of any agency, except where otherwise provided by law."). However, Plaintiff may only bring a Section 1983 claim against the City of New York if he can show that a municipal policy or custom caused the deprivation of his constitutional rights. *See id.* (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); *Hu v. City of New York*, 927 F.3d 81, 104 (2d Cir. 2019)).[14] To the extent Plaintiff seeks to bring this claim against any individual, he must allege that individual's personal involvement in any constitutional deprivations.[15] *Brandon*, 938 F.3d at 36. The Court grants Plaintiff leave to amend if he can, in good faith, satisfy these deficiencies in his pleading.

### B. Section 1983 Claims Related to the Stop, Search, Use of Force, and Arrest

Plaintiff alleges that "on 8/20/2019 . . . he was arrested for Robbery in [the] Second Degree by the police of the 106 Precinct in Queens and the us[e] of physical force," and that he was "stopped because he was Black and initially was stopped, detained, searched, seized and arrested and was not told of [h]is Miranda Rights."[16] (Am. Compl., Dkt. 5, at ECF 4). Plaintiff further

---

[14] "Four types of practices may underly a § 1983 suit against a municipality: (1) a formally adopted municipal policy; (2) the actions or decisions of a municipal official with final policymaking authority; (3) a practice so persistent and widespread that it constitutes a custom or usage; and (4) a failure by official policymakers to properly train or supervise subordinates to such an extent that it amounts to deliberate indifference." *Joseph*, 2020 WL 2128860, at *2.

[15] Section 1983 liability for a supervisor can be shown in one of the following ways: "(1) actual direct participation in the constitutional violation, (2) failure to remedy a wrong after being informed through a report or appeal, (3) creation of a policy or custom that sanctioned conduct amounting to a constitutional violation, or allowing such a policy or custom to continue, (4) grossly negligent supervision of subordinates who committed a violation, or (5) failure to act on information indicating that unconstitutional acts were occurring." *Hernandez v. Keane*, 341 F.3d 137, 145 (2d Cir. 2003).

[16] To the extent Plaintiff seeks to bring a claim based solely on the failure of police to administer *Miranda* warnings, the Court dismisses such a claim as not cognizable under Section 1983. *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 346 (2d Cir. 1998) (Plaintiff "cannot base a § 1983 claim solely on a law enforcement officer's failure to administer *Miranda*

alleges that the description provided by the victim to the police ("[a] black male, wearing a cap,

hat, T-Shirt, black Jeans") was "[v]ague," "incomplete in detail,"  and "literally can fit thousands

of men in our Society at any Given time!"  (*Id.* at ECF 44.)  Plaintiff also alleges that the "Police

Department" (presumably the NYPD) and the Queens District Attorney's Office were working in

conjunction "to illegally indict"[17] him and that it was "suggestive by the Police that [he] was the

person who committed the robbery."[18]  (*Id.* at ECF 4.)  Construing these facts liberally, it appears

---

warnings[.]"); *Myers v. Cnty. of Nassau*, 825 F. Supp. 2d 359, 368 (E.D.N.Y. 2011) ("As to any *Miranda* claim, such violations are, as noted above, properly redressed by the exclusion of improperly obtained evidence at trial; and not by way of an action pursuant to Section 1983.")

[17] At this time, Plaintiff cannot state a claim for malicious prosecution because he is still awaiting trial and an element of this claim is that the criminal proceeding was "terminated favorably to the plaintiff."  *Rothstein v. Carriere*, 373 F.3d 275, 282 (2d Cir. 2004)  Further, "in order for a plaintiff to succeed in a malicious prosecution claim *after having been indicted*, 'he must establish that the indictment was produced by fraud, perjury, the suppression of evidence or other police conduct undertaken in bad faith.'" *Id.* at 283 (emphasis added) (quoting *Colon v. City of New York*, 60 N.Y.2d 78, 83 (2004)).  The Court also finds that, even when construed liberally, the Amended Complaint fails to include facts that would state a conspiracy claim, the elements of which are: "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages."  *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999).

[18] It is unclear what Plaintiff means when he says that it was "suggestive by the Police that [he] was the person who committed the robbery." (*Id.* at ECF 4.)  To the extent Plaintiff is alleging that police officers offered false testimony against him during the grand jury proceedings, the officers are absolutely immune from civil suit for such testimony.  *See Rehberg v. Paulk*, 566 U.S. 356, 367 (2012) ("The factors that justify absolute immunity for trial witnesses apply with equal force to grand jury witnesses . . . [and] there [is no] reason to distinguish law enforcement witnesses from lay witnesses."); *Jovanovic v. City of New York*, 486 F. App'x 149, 152 (2d Cir. 2012) (summary order) (citing *Rehberg* and holding that detective enjoyed "absolute immunity" for Grand Jury testimony regarding allegedly fabricated evidence).  However, to the extent Plaintiff is alleging that police officers suggested to victims or witnesses that Plaintiff perpetrated the robbery with which he has been charged, he fails to provide any facts to support a fair trial claim.  *See Jovanovic*, 486 F. App'x at 152 (A person is deprived of a fair trial and "suffers a constitutional violation if an (1) investigating official (2) fabricates evidence (3) that is likely to influence a jury's decision, (4) forwards that information to prosecutors, and (5) the plaintiff suffers a deprivation of liberty as a result."); *Hamilton v. City of New York*, No. 15-CV-4574 (CBA) (SJB), 2019 WL 1452013, at *19 (E.D.N.Y. Mar. 19, 2019) (denying [NYPD detectives'] "motions for summary judgment on [Plaintiff]'s fair trial claim alleging that they fabricated evidence and suborned

that, with the opportunity to amend, Plaintiff may be able to state Section 1983 claims under the Fourth and Fourteenth Amendments on the basis of an unreasonable investigatory stop, unlawful search, unlawful arrest, excessive use of force, and an equal protection violation.[19] However, the Amended Complaint does not sufficiently allege any such claims.

### 1. Unreasonable Investigatory Stop

In "appropriate circumstances and in an appropriate manner" the police may "approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest." *Dancy v. McGinley*, 843 F.3d 93, 106 (2d Cir. 2016) (citing *Terry v. Ohio*, 392 U.S. 1, 22 (1968)). To justify such a stop, "the officer must have reasonable suspicion— a reasonable basis to think that the person to be detained is committing or has committed a criminal offense." *Id.* (internal quotation and citation omitted). Reasonable suspicion is an objective

---

perjury by coercing [witness] to make false inculpatory statements and deliver false testimony"); *Shabazz v. Kailer*, 201 F. Supp. 3d 386, 399 (S.D.N.Y. 2016) ("To the extent the § 1983 fair trial claim against [NYPD officer] is not based on his grand jury or trial testimony, but on his forwarding of the false information to the prosecutor, the forwarding of false information can form the basis for that claim.").

[19] In doing so, however, the Court notes that even if adequately pled, such claims likely would be stayed pending the resolution of Plaintiff's criminal case. *See Wallace v. Kato*, 549 U.S. 384, 393–94 (2007) (explaining that where a civil action relates to rulings that "will likely be made in a pending or anticipated criminal trial," "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended."); *Heck v. Humphrey*, 512 U.S. 477, 487 n.8 (1994) ("[I]f a state criminal defendant brings a federal civil-rights lawsuit during the pendency of his criminal trial, appeal, or state habeas action, abstention may be an appropriate response to the parallel state-court proceedings."). Further, if Plaintiff is ultimately convicted, and the stayed civil case would call into question the validity of that conviction, then the civil case must be dismissed. *Wallace*, 549 U.S. at 394 (citing, *inter alia*, *Heck*, 512 U.S. at 487). Lastly, "[c]ourts in this Circuit have repeatedly barred § 1983 claims attempting to relitigate in federal court issues decided against them in prior criminal proceedings, whether held in federal or state court." *See Almonte v. City of New York*, No. 15-CV-6843 (PAE), 2018 WL 3998026, at *3 (S.D.N.Y. Aug. 21, 2018) (collecting cases and holding that Section 1983 claim based on an alleged unlawful stop was barred by collateral estoppel because the judge in the criminal case ruled that the stop was constitutional in denying suppression motion).

standard, and courts "must look at 'the totality of the circumstances' of each case to see whether the detaining officer has a 'particularized and objective basis' for suspecting legal wrongdoing." *Floyd v. City of New York*, 959 F. Supp. 2d 540, 568 (S.D.N.Y. 2013) (citations omitted). Courts have found that a vague description referring to race may not provide reasonable suspicion to justify a stop. *See Dancy*, 843 F.3d at 109 ("[T]he remaining description—thin, black, and male— is too vague in the circumstances here to justify a stop of anyone meeting it[.]"); *United States v. Swindle*, 407 F.3d 562, 569–70 (2d Cir. 2005) ("[C]ourts agree that race, when considered by itself and sometimes even in tandem with other factors, does not generate reasonable suspicion for a stop.").

Construed liberally, the Amended Complaint may be read to allege a stop that was not supported by reasonable suspicion, but rather was made "because [Plaintiff] was black" and may have matched a "vague" description by the victim. (Dkt. 5, at ECF 4.) However, Plaintiff does not allege which officer(s) were personally involved in making the stop, nor does he provide additional details about the circumstances of the stop (i.e., what he was wearing, where he was, what he was doing) that would allow the Court to evaluate the totality of the circumstances surrounding the stop.[20] The Court grants Plaintiff leave to amend if he can, in good faith, satisfy these deficiencies in his pleading.

    2.   Unlawful Search

The Fourth Amendment protects "[t]he right of the people to be secure in their person, houses, papers and effects against unreasonable searches and seizures." *Snead v. City of New York*,

---

[20] The Court notes that Officer Toto testified before the grand jury that after receiving a radio run for a robbery in progress, his attention was drawn to Plaintiff who "was bending down and rifling through a bag and just staring at us as we passed him," and then after Officer Toto circled around the block, he "observed [Plaintiff] with a few items on the hood of the car and a bag by his feet." (Am. Compl., Dkt. 5, at ECF 86–87.)

463 F. Supp. 3d 386, 396 (S.D.N.Y. 2020) (quoting U.S. Const. amend. IV). "Whether a search is reasonable is determined by assessing, on the one hand, the degree to which it intrudes upon an individual's privacy and, on the other, the degree to which it is needed for the promotion of legitimate government interests." *Id.* (quoting *United States v. Quinones*, 457 Fed. App'x 68, 69 (2d Cir. 2012)).

The Amended Complaint references a search, but Plaintiff does not identify the officer(s) who were personally involved in the search or describe the circumstances of the search, the scope of the search, or the level of intrusion into his privacy. The Court grants Plaintiff leave to amend if he can, in good faith, satisfy these deficiencies in his pleading.[21]

> 3.    False Arrest

The elements of a false arrest claim are "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement and (4) the confinement was not otherwise privileged." *Hernandez v. United States*, 939 F.3d 191, 199 (2d Cir. 2019) (citation omitted). "The existence of probable cause to arrest constitutes justification and 'is a complete defense to an action for false arrest[.]'" *Jenkins v. City*

---

[21] The Court notes that a Section 1983 action based on an unreasonable search may stand, even if the search produced evidence that was introduced in a state criminal trial. Due to "doctrines like independent source and inevitable discovery, . . . and especially harmless error, . . . such a § 1983 action, even if successful, would not necessarily imply that the plaintiff's conviction was unlawful," and therefore, would not be barred under *Heck*." *Potter v. Port Jervis Police Dep't*, No. 19-CV-10519 (CM), 2020 WL 528823, at *3 (S.D.N.Y. Feb. 3, 2020) (quoting *Heck*, 512 U.S. at 487 n.7). However, in certain situations, these doctrines are not applicable, such as where "the entire evidentiary basis for the charged offense [is] derive[d] from a single episode involving a single search,'" and consequently, the Section 1983 claim must be dismissed without prejudice. *Id.* at *3 & n.6 (citation omitted); *see Monroe v. Gould*, 372 F. Supp. 3d 197, 203 (S.D.N.Y. 2019) (finding that Section 1983 claim based on an allegedly unlawful search was barred by *Heck* because the conviction was based solely on cocaine obtained during that search—"in other words, a single episode involving a single search").

*of New York*, 478 F.3d 76, 84 (2d Cir. 2007) (citation omitted).[22]  Probable cause exists when arresting officers have "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime."  *Hernandez*, 939 F.3d at 199.

The Amended Complaint may also be read to challenge the validity of Plaintiff's arrest. However, again, Plaintiff does not identify the officer(s) who were personally involved in making the arrest, nor does he explain why he believes the arrest was not privileged or justified by probable cause.  The Court grants Plaintiff leave to amend if he can, in good faith, satisfy these deficiencies in his pleading.

4.    Excessive Force

The Fourth Amendment prohibits the use of "unreasonable" force by a police officer effecting an arrest.  *Tracy v. Freshwater*, 623 F.3d 90, 96 (2d Cir. 2010) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)).  Courts apply a test of "objective reasonableness" that is "case and fact specific" and guided by at least three factors: "(1) the nature and severity of the crime leading to the arrest, (2) whether the suspect poses an immediate threat to the safety of the officer or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing, *inter alia*, *Graham*, 490 U.S. at 396).  "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment."  *Id.* (quoting *Graham*, 490 U.S. at 397).  Courts in this Circuit are split as to whether a Fourth

---

[22] Further, "[w]hen an arrest results in conviction, that conviction is an absolute defense to Section 1983 claims asserting that the arrest was made without probable cause."  *Almonte*, 2018 WL 3998026, at *4; *see Jenkins v. Elder*, No. 12-CV-4165 (RRM) (LB), 2015 WL 5579699, at *4 (E.D.N.Y. Sept. 22, 2015) (citing, *inter alia*, *Cameron v. Fogarty*, 806 F.2d 380, 386–89 (2d Cir. 1986)).

Amendment excessive force claim can be dismissed solely for failure to establish more than *de minimis* injury. *Rizk v. City of New York*, 462 F. Supp. 3d 203, 223–24 (E.D.N.Y. 2020) (collecting cases).

Although Plaintiff alleges that his arrest was made with the "us[e] of physical force," (*see* Dkt. 5, at ECF 4), he does not identify the officer(s) who were personally involved in the use of force against him or offer any facts about the nature, circumstances or degree of force used, nor does he allege any injury resulting from any officer's use of force.[23]   The Court grants Plaintiff leave to amend with respect to an excessive force claim if he can, in good faith, satisfy these deficiencies in his pleading.

5.    Equal Protection Violation

"To state a claim for an equal protection violation, [a] plaintiff must allege that a government actor intentionally discriminated against him on the basis of race, national origin, or gender." *Little v. City of New York*, 487 F. Supp. 2d 426, 443 (S.D.N.Y. 2007) (quoting *Hayden v. Cnty. Of Nassau,* 180 F.3d 42, 48 (2d Cir. 1999) (internal alterations omitted)).   "Where it is alleged that police officers investigate solely based upon race, without more, then plaintiff will have stated an actionable claim under the Equal Protection Clause.  *Id.* (citing *Brown v. City of Oneonta,* 221 F.3d 329, 337–38 (2d Cir. 2000)); *see also Ali v. Connick*, 136 F. Supp. 3d 270, 280 (E.D.N.Y. 2015) ("[O]fficers' use of racial epithets may be regarded as direct evidence of racial animus and, when combined with . . . other unlawful actions, may establish an equal protection violation." (citation omitted)).

---

[23] Plaintiff attached a "NYPD Medical Treatment of Prisoner" form to his Amended Complaint, indicating that on the night of his arrest he was escorted to Jamaica Hospital for high blood pressure.  (Am. Compl., Dkt 5., at ECF 9.)  No other injuries or medical issues are identified.

Plaintiff alleges that he was "stopped because he was black" (*see* Dkt. 5, at ECF 4), but offers no other facts indicating that the officer(s) who stopped and subsequently arrested him did so based solely on his race.  Further, Plaintiff does not identify which officer(s) were personally involved in stopping and arresting him allegedly because of his race.  The Court grants Plaintiff leave to amend with respect to an equal protection violation claim if he can, in good faith, satisfy these deficiencies in his pleading.

## VI.    Amended Complaint

In granting leave to amend with respect to the potential investigatory stop, search, arrest, excessive force, and equal protection claims, the Court reiterates that claims against individual defendants must allege personal involvement in the alleged constitutional violations.  *Brandon*, 938 F.3d at 36.  Further, to the extent Plaintiff has a grievance with the "106 Police Precinct" or the "Police Department" instead of, or in addition to, individual officers (*see* Dkt. 5, at ECF 4), neither of those entities may be sued.  *Brannon v. 73rd Precinct*, No. 15-CV-72 (RRM) (RLM), 2016 WL 8711204, at *2 (E.D.N.Y. Apr. 15, 2016) ("Neither police precincts, nor the NYPD itself, have a legal identity separate and apart from City of New York and cannot sue or be sued; they are merely administrative arms of a municipality." (citing, *inter alia*, *Lauro v. Charles,* 219 F.3d 202, 205 n.2 (2d Cir. 2000))).  Rather, Section 1983 claims aimed at these entities should be brought against the City of New York, and Plaintiff must allege that a municipal policy or custom caused the deprivation of his constitutional rights.  *Bey ex rel. Dickerson v. Kelly*, No. 20-CV-2399 (PKC) (LB), 2020 WL 3414612, at *3 (E.D.N.Y. June 22, 2020) (citing, *inter alia*, *Monell*, 436 U.S. at 690–91).[24]

---

[24] *See supra* n.14 (describing four types of practices that may underly a Section 1983 suit against a municipality).

Finally, the Court reiterates—and Plaintiff must understand—that the Court will *not* intervene in his pending criminal case.  If Plaintiff chooses to amend his complaint to address any of the deficiencies raised in the aforementioned Section 1983 claims, he must address the relief he is seeking.  But that relief should not include a request that this Court interfere with his pending prosecution in state court; such a request will almost certainly be denied.  *See Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 72 (2013) ("When there is a parallel, pending state criminal proceeding, federal courts must refrain from enjoining the state prosecution."); *Younger v. Harris,* 401 U.S. 37, 53–54 (1971)*; Nelson*, 2013 WL 5502901, at *4 (explaining that federal courts "may not interfere with pending state court criminal prosecutions, absent some extraordinary circumstance[,] . . . [as] New York has an important state interest in enforcing its criminal laws, and plaintiff is free to raise his constitutional claims in the pending criminal proceedings").  "This doctrine of federal abstention rests foursquare on the notion that, in the ordinary course, 'a state proceeding provides an adequate forum for the vindication of federal constitutional rights.'" *Diamond "D" Constr. Corp. v. McGowan*, 282 F.3d 191, 198 (2d Cir. 2002) (citation omitted). The only exception to this Court's abstention is if Plaintiff can show "bad faith, harassment[,] or any other unusual circumstance that would call for equitable relief."  *Id.* at 198 (quoting *Younger*, 401 U.S. at 54).  Plaintiff has not alleged any facts to support such a showing.

## CONCLUSION

Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. The Honorable Barry Kron, District Attorney Melinda Katz, Assistant District Attorney Genevieve Gadaleta, and Richard Cary Spivack are dismissed.  In light of Plaintiff's *pro se* status, the Court grants him leave to file a Second Amended Complaint to allege, if he can do so in good faith, facts that may serve to cure the deficiencies identified in this Memorandum and Order with respect to any: (1) Section 1983 claims on the bases of an unreasonable investigatory stop, unlawful search, unlawful arrest, excessive use of force, discrimination on the basis of race, and/or deliberate indifference to the risk of Plaintiff contracting COVID-19 while in custody at Rikers Island; (2) Section 2241 habeas claim challenging the conditions of his pretrial confinement at Rikers Island; and/or (3) claims against New York State Attorney General Letitia James or Officer Toto.

If Plaintiff elects to file an amended complaint, it shall be captioned "SECOND AMENDED COMPLAINT" and bear the same docket number as this Order, 1:20-cv-04593 (PKC) (VMS), and must be filed within sixty (60) days from the entry of this Memorandum and Order.  Plaintiff must provide facts to support a claim against each defendant named in the Second Amended Complaint, including the date and location of the events at issue, a description of what each defendant did or failed to do, and the relief requested.

The Second Amended Complaint shall replace the Amended Complaint. That is, the Second Amended Complaint must stand on its own without reference to the Amended Complaint, nor any documents filed as exhibits to that complaint.  Plaintiff is directed not to submit additional documents to the Court unless they are incorporated as exhibits to the Second Amended Complaint.  If submitted, the Second Amended Complaint will be reviewed for compliance with this Memorandum and Order and for sufficiency under 28 U.S.C. § 1915(e)(2)(B).  If Plaintiff fails to submit a Second Amended Complaint within sixty (60) days, this matter will be terminated.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith. *Coppedge v. United States*, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: December 16, 2020
        Brooklyn, New York